# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

TINA NEWMAN,
                Plaintiff,

    v.

NANCY A. BERRYHILL,  Acting
Commissioner of Social Security,

                Defendant.

CIVIL ACTION NO. 3:17-CV-00177

(MEHALCHICK, M.J.)

## MEMORANDUM OPINION

This is an action brought under Section § 1383(c)(3) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Tina Newman's ("Ms. Newman") claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is ordered that the Commissioner's decision be **VACATED** and this case **REMANDED** to conduct a new administrative hearing.

## I.   BACKGROUND & PROCEDURAL HISTORY

On December 17, 2015, Ms. Newman protectively filed applications for benefits under Title II and Part A of Title XVIII of the Social Security Act,[1] asserting an onset date of March 6, 2014 at which time Ms. Newman was forty-five (45) years old. (Doc. 12-5, at 3). Ms. Newman alleged that she became disabled due to a combination of vertigo, high blood pressure, asthma, bronchitis, allergies, depression, and anemia. (Doc. 12-6, at 5).

On March 10, 2016, Ms. Newman's claims were denied at the initial level of administrative review. (Doc. 12-4, at 4). Ms. Newman filed a timely request for a hearing before an administrative law judge ("ALJ") on March 22, 2016 (Doc. 12-4, at 9), and appeared with her attorney and testified at an administrative hearing before ALJ Frank Barletta on September 26, 2016. (Doc. 12-2, at 59-90). Impartial vocational expert ("VE") Gerald Keating also appeared and testified at the hearing. (Doc. 12-2, at 81-89). The ALJ denied Ms. Newman's claims in a written decision dated October 3, 2016, in which the ALJ concluded that while Ms. Newman was unable to perform any past relevant work, she was capable of performing light exertional work. (Doc. 12-2, at 24-28). On November 21, 2016, Ms. Newman requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review. (Doc. 12-2, at 11-13). The Appeals Council denied her request for review on December

---

[1] The Court recognizes that Ms. Newman's complaint asserts she is entitled to Supplemental Security Income ("SSI") benefits under Title XII of the Act, instead of DIB under Title II of the Act. (Doc. 1, at 1). However, as the initial application filed with the Social Security Administration relates to DIB, and indicates that Ms. Newman did not want to file for SSI, the Court will focus its analysis under Title II accordingly. (Doc. 12-5, at 2).

2, 2016 thus affirming the ALJ's October of 2016 decision as the final decision of the Commissioner subject to judicial review by this Court. (Doc. 12-2, at 2-5).

Ms. Newman initiated this action by filing a complaint through her counsel of record, received and filed by the Court on January 1, 2017. (Doc. 1). In her complaint, Ms. Newman alleges that the ALJ's decision was not supported by substantial evidence in the record and was contrary to law and regulation. (Doc. 1, at 2). Ms. Newman requests that this Court remand the case for a further administrative hearing and award attorney's fees. (Doc. 1, at 2). After service of the complaint, the Commissioner filed an answer together with a certified transcript of the entire record of the administrative proceedings on April 4, 2017. (Doc. 11; Doc. 12). In her answer, the Commissioner asserts that the ALJ's decision was made in accordance with the law and regulations and that the findings of fact are supported by substantial evidence. (Doc. 11, at 3, ¶8). This matter has been fully briefed by the parties and is now ripe for decision. (Doc. 16; Doc. 20; Doc. 21).

## II.  STANDARD OF REVIEW

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant

must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work that exists in significant

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[3] "Substantial gainful activity" is defined as "work that—(a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[5] A claimant's RFC is the most a claimant can still do despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1). This assessment encompasses all of the claimant's medically-determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). The ALJ assesses

*(footnote continued on next page)*

numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a) (effective Apr. 20, 2015, through Mar. 26, 2017). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f) (effective Apr. 20, 2015, through Mar. 26, 2017).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores

the claimant's RFC before proceeding from step three to step four in the sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The RFC is then used at steps four and five to evaluate the claimant's case. 20 C.F.R. § 404.1520(a)(4).

countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Ms. Newman is disabled, but whether the Commissioner's finding that she is not disabled was supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## III. THE ALJ'S DECISION

In his May 2015 decision, the ALJ found Ms. Newman was not disabled and thus declined her application for benefits. (Doc. 9-2, at 21). The ALJ assessed Ms. Newman's case through the five-step sequential evaluation required by the Social Security Act. *See* 20 C.F.R. § 404.1520.

As a preliminary matter, the ALJ found that Ms. Newman met the insured status requirement of Title II of the Social Security Act through September 30, 2020. (Doc. 12-2, at 20). Proceeding to step one of the sequential evaluation process, the ALJ next found that Ms. Newman had not engaged in substantial gainful activity since the March 6, 2014 onset date. (Doc. 12-2, at 21).

At step two, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments during the relevant period: asthma; anemia; obesity; hypertension; depression; and an anxiety disorder. (Doc. 12-2, at 21). The ALJ found that the combination of these impairments caused "more than a minimal functional limitation" in Ms. Newman's ability to perform basic work functions, and was thus considered to be severe. (Doc. 12-2, at 21). The ALJ further recognized that Ms. Newman's medical history included hyperlipidemia, bronchitis, and vertigo, however determined these impairments were non-severe. (Doc. 12-2, at 21).

At step three, the ALJ found that during the relevant period, Ms. Newman did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in the version of 20 C.F.R. Part 404, Subpart P, Appendix 1 that was in effect when the ALJ issued his decision. (Doc. 12-2, at 21). First, the ALJ determined that Ms. Newman's impairments did not meet the listings in Section 3.03 for asthma, because the record did not show that she suffered from asthma with chronic asthmatic bronchitis as outlined under Section 3.02A, or from asthma with attacks, as defined in Section 3.00C, that occurred at least once every two (2) months. (Doc. 12-2, at 21). The ALJ also considered the hematological listings in Section 7.00, but found that the record did not reveal Ms. Newman's anemia achieved the necessary level of severity. (Doc. 12-2, at 21). Next the ALJ considered listing 4.00

for Ms. Newman's hypertension, and evaluated her condition in the context of the other body systems it affected (namely her heart, brain, kidneys or eyes). (Doc. 12-2, at 22). Although the ALJ noted Ms. Newman's hypertension was severe, he concluded that it did not meet the requirements for severity under the listing. (Doc. 12-2, at 22). The ALJ additionally evaluated Ms. Newman's obesity under several listings, and in conjunction with any related musculoskeletal, respiratory, or cardiovascular conditions she had. (Doc. 12-2, at 22). However, after considering both the singular or cumulative effects of Ms. Newman's obesity, the ALJ determined that she did not meet the criteria of a listing. (Doc. 12-2, at 22). Finally, the ALJ considered section 12.00 of the listings for Ms. Newman's mental health impairments, however found that she did not meet their requirements of 12.04 or 12.06 based on her medical records. (Doc. 12-2, at 22-24).

Between steps three and four, the ALJ assessed Ms. Newman's RFC. (Doc. 12-2, at 24). Ms. Newman alleged that her impairments caused the following symptoms: fatigue, high blood pressure, dizziness, shortness of breath, depression, difficulty with lifting, difficulty with interacting with others, a preference for isolation, and neglect of household responsibilities. (Doc. 12-2, at 25). After examining her statements and the medical evidence, the ALJ found that Ms. Newman's impairments could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely credible. (Doc. 12-2, at 25). The ALJ then went on to detail Ms. Newman's medical records and treatment history. (Doc. 12-2, at 25-27). In doing so, the ALJ considered

and weighed medical opinions by the following sources: non-treating physician[6] Jay Willner, M.D. ("Dr. Willner") (Doc. 12-2, at 26); treating psychiatrist[7] Sharon Cline, M.D. ("Dr. Cline") (Doc. 12-2, at 26); and non-examining[8] state agency psychological consultant Anthony Galdieri, Ph.D. ("Dr. Galdieri") (Doc. 12-2, at 26-27). The ALJ also considered Ms. Newman's Global Assessment of Functioning ("GAF") scores that were rendered over the course of her treatment, and gave them little weight. (Doc. 12-2, at 26).

Dr. Willner completed a consultative examination of Ms. Newman on March 3, 2016. (Doc. 12-7, at 50-59). In his report, Dr. Willner noted that Ms. Newman had a fair prognosis, and could continuously lift and carry up to 10, 20, 50, and 100 pounds (Doc. 12-7, at 53-54). Dr. Willner further noted that Ms. Newman did not require the use of a cane to ambulate, and could sit, stand, and walk for 8 hours without interruption, and for 8 hours total in a work day.

---

[6] A non-treating source is defined by the Social Security Regulations as any physician, psychologist, or other acceptable medical source that examined the claimant, but does not have any ongoing or past treatment relationship with him or her. 20 C.F.R. § 404.1502. This term includes an acceptable medical source who is a consultative examiner for the Social Security Administration, when that consultative examiner is not a claimant's treating source. 20 C.F.R. § 404.1502.

[7] A treating source is defined by the Social Security Regulations as a claimant's "own physician, psychologist, or other acceptable medical source who provides . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. An "ongoing treatment relationship" exists or existed if the claimant "see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." 20 C.F.R. § 404.1502.

[8] A non-examining source is defined by the Social Security Regulations as a physician, psychologist, or other acceptable medical source that has not examined the claimant, but provides a medical or other opinion in the case. At the ALJ hearing and Appeals Council levels of the administrative review process, it includes State agency medical and psychological consultants, other program physicians and psychologists, and medical experts or psychological experts consulted by the Social Security Administration. 20 C.F.R. § 404.1502.

(Doc. 12-7, at 55). Dr. Willner did not note any limitations with Ms. Newman's use of her hands or feet (Doc. 12-7, at 56), however found that, due to her vertigo, she could never climb ladders or scaffolds or balance, and could occasionally climb stairs and ramps, stoop, kneel, crouch and crawl. (Doc. 12-7, at 57). Dr. Willner further opined that due to Ms. Newman's vertigo and asthma, she experienced the following environmental limitations: that she could never be exposed to unprotected heights, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, or extreme heat; that she could occasionally be exposed to moving mechanical parts; that she could frequently be exposed to operating a motor vehicle and vibrations; and that she could tolerate loud noises. (Doc. 12-7, at 58). The ALJ afforded this evaluation little weight, as it was inconsistent with the medical evidence in the record and examination findings. (Doc. 12-2, at 26). The ALJ additionally noted that Dr. Willner was not Ms. Newman's treating physician, and that he generally underestimated Ms. Newman's ongoing limitations. (Doc. 12-2, at 26).

The ALJ also considered the opinion of treating physician Dr. Cline, who evaluated Ms. Newman and completed a medical source statement on July 25, 2016. In her report, Dr. Cline found that Ms. Newman had lifting and carrying limitations, and could occasionally lift 0-5 pounds and 10-20 pounds, but could never lift 10-20 pounds or 20-50 pounds. (Doc. 12-8, at 41). Dr. Cline also noted that Ms. Newman could stand and walk for a total of 1 hour in an 8 hour work day, and could sit for a total of 5 hours in an 8 hour work day. (Doc. 12-8, at 41). Further, Dr. Cline indicated that Ms. Newman had limitations with postural activities such that she could never climb, bend, balance, stoop, crouch, or crawl, but could occasionally kneel. Ms. Newman also had manipulative limitations such that she could never reach, but could frequently feel and handle and occasionally push and pull. (Doc. 12-8, at 42). Dr. Cline

additionally opined that Ms. Newman experienced environmental limitations when exposed to extreme temperatures, chemicals, dust, fumes and humidity. (Doc. 12-8, at 42). However, the ALJ concluded that Ms. Newman's limited treatment history did not support the extreme limitations found by Dr. Cline. (Doc. 12-2, at 26). Specifically, the ALJ noted that Ms. Newman's physical examination findings were relatively normal throughout her period of treatment, and did not corroborate a finding of disability. (Doc. 12-2, at 26). Finally, the ALJ indicated that any finding of "disabled" not was persuasive, as this was an opinion reserved to the Commissioner (SSR 96-5p). As such, the ALJ afforded Dr. Cline's medical source statement little weight. (Doc. 12-2, at 26).

Finally, the ALJ considered the stage agency mental assessment of Dr. Galdieri, completed on February 23, 2016. (Doc. 12-3, at 2-12). Therein, Dr. Galdieri noted that Ms. Newman's affective disorder, considered under listing 12.04, resulted in mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. (Doc. 12-3, at 7). The ALJ gave this opinion great weight, as the record and mental status examination findings supported Dr. Galdieri's conclusion that Ms. Newman's limitations were moderate at worst. The ALJ further noted that Ms. Newman had primarily received mental health counseling on an intermittent basis, and that she had not required any intensive care as a result of her symptoms. (Doc. 12-2, at 27).

Based on his consideration of the above referenced medical opinions and of the other relevant evidence of record, the ALJ assessed that, during the relevant period, Ms. Newman had the RFC to perform light work, but with the following limitations:

"[Ms. Newman] could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently; could push/pull for as much as she could lift/carry; could sit, stand, and walk for up to 6 hours, each, in an 8-hour workday; could occasionally climb ramps/stairs, but never ladders, ropes, and scaffolds; could never balance; could occasionally stoop, kneel, crouch, and crawl; must avoid exposure to dusts, odors, fumes, pulmonary irritants, humidity, and wetness; could perform only unskilled work, involving only simple tasks, not performed in a fast-paced production environment; would be limited to low-stress occupations with only occasional, simple decision-making; would be limited to occasional changes in work duties or the work setting; and could have occasional interaction with the public, coworkers, and supervisors."

(Doc. 12-2, at 24).

At step four of the sequential evaluation process, the ALJ found that Ms. Newman was not able to perform her past relevant work as a field supervisor. (Doc. 12-2, at 27). In reaching this conclusion, the ALJ relied on the testimony of VE Keating, who stated that work as a field supervisor was classified at the light exertional level and is skilled in nature. (Doc. 12-2, at 27). The ALJ therefore found that Ms. Newman was unable to perform the requirements of her past relevant work, given her assessed RFC. (Doc. 12-2, at 28).

At step five of the sequential analysis process, the ALJ considered Ms. Newman's age, education, work experience and residual functioning capacity to see if she could make the adjustment to other work. 20 C.F.R. § 404.1569. The ALJ determined that Ms. Newman was a younger individual under 20 C.F.R. § 404.1563, as she was 45 years old on the alleged disability onset date. (Doc. 12-2, at 28). The ALJ also found that Ms. Newman had at least a high school education and was able to communicate in English as described under 20 C.F.R. § 404.1564. (Doc. 12-2, at 28). While the ALJ recognized that Ms. Newman's RFC to perform a range of light work had been impeded by additional limitations, it did not entirely eliminate the work base in which she could participate. (Doc. 12-2, at 28). Thus, the ALJ found that Ms. Newman

retained the ability to perform occupations such as an assembler of small products, apparel stock checker, and housekeeper. (Doc. 12-2, at 28-29).

As a result of these findings, the ALJ determined that Ms. Newman had "not been under a disability, as defined in the Social Security Act, from March 6, 2014, through [October 3, 2016]." (Doc. 12-2, at 29).

## IV. DISCUSSION

Ms. Newman advances two arguments on appeal. First, Ms. Newman asserts that the RFC determination is unsupported by substantial evidence, as the ALJ failed to accord proper weight to the opinion of Ms. Newman's treating physician, or rely on any medical opinion evidence in support of the ultimate RFC determination. (Doc. 16, at 7). Second, Ms. Newman argues that the ALJ's determination at step five is unsupported by substantial evidence, as it improperly relied on his own interpretation of medical evidence and thus rendered the hypothetical question posed to the VE incomplete. (Doc. 16, at 7, 13).

### A. THE ALJ ERRED IN HIS EVALUATION OF OPINION EVIDENCE

Ms. Newman contends that the ALJ improperly weighed the opinions of her treating physician, Dr. Cline, and examining physician, Dr. Willner. (Doc. 16, at 8). Specifically, Ms. Newman asserts that the ALJ failed to fully credit any medical evidence that contradicted the treating source's opinion, and did not rely on any opinion that was consistent with the ultimate RFC determination. (Doc. 16, at 9). As a result, Ms. Newman alleges that the RFC is not supported by substantial evidence, but rather based upon the ALJ's impermissible lay interpretation of the medical record. (Doc. 16, at 9). The Commissioner argues that the ALJ's evaluation of the medical opinion evidence, and subsequent RFC determination, is supported by substantial evidence. (Doc. 20, at 17). Further, the Commissioner argues that the ALJ is not

bound by the opinions of treating physicians, as the RFC is ultimately an assessment reserved to the ALJ. (Doc. 20, at 18, 22).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion…receive[d]." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[9] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

---

[9] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

SSR 96-6p addresses the weight afforded to treating medical sources, such as Dr. Cline. SSR 96-6p, 1996 WL 374180 (July 2, 1996).[10] Because treating sources often have the closest ties to a claimant, their opinions are generally entitled to more weight. 20 C.F.R. § 404.1527(c)(2). Under certain circumstances, the medical opinion of a treating source may even be entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 at *1. A treating physician's opinion warrants controlling weight where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). On the other hand, a treating source's opinion may be rejected "only on the basis of contradictory medical evidence . . . ." *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999). Thus, even if a treating source's medical opinion is not entitled to controlling weight, it still may be entitled to significant deference. SSR 96-2p, 1996 WL 374188 at *4.

Upon establishing that a treating source's opinion is not entitled to controlling weight, an ALJ must weigh the opinion "using all of the factors provided in 20 CFR 404.1527," which are also used for evaluating opinions by non-treating and non-examining medical sources. SSR 96-2p, 1996 WL 374188 at *4. These factors include: (1) the examining relationship; (2) the treatment relationship, including its length and nature; (3) the supportability of the medical source's opinions; (4) consistency; (5) specialization; and (6) other relevant factors. 20 C.F.R. § 404.1527(c); *see also* SSR 96-6p, 1996 WL 374180 at *2 ("The regulations provide progressively

---

[10] SSR 96-6p was published and became effective on July 2, 1996. Although since rescinded and replaced by SSR 17-2p, SSR 96-6p was in effect at the time the ALJ rendered his decision that is now before this Court.

- 15 -

more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). Further, 20 C.F.R. § 404.1527(c)(2) requires that the Commissioner "will always give good reasons in [his] notice of determination or decision for the weight [he] gives to [a claimant's] treating source's opinion." *See also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) (Finding the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Here, the ALJ afforded "little weight" to the medical source statements of Dr. Willner and Dr. Cline, which were the only two physicians that authored opinions regarding Ms. Newman's physical impairments. (Doc. 12-2, at 26-27). However, Ms. Newman particularly contests the weight afforded to Dr. Cline's medical source statement of July 25, 2016.[11] (Doc. 12-2, at 26; Doc. 12-8, at 41). In the report, Dr. Cline opined that Ms. Newman's impairments affected her ability to sit, stand, and walk over the course of a work day. (Doc. 12-8, at 41-42). Notably, Dr. Cline found that, as a result of Ms. Newman's asthma and anemia, she was

---

[11] Indeed, that Ms. Newman does not appear to ultimately disagree with the weight afforded to Dr. Willner's evaluation, as it "is clearly contradicted by the record." (Doc. 16, at 12). As such, the Court will focus its analysis on the weight afforded to Dr. Cline's opinion. However, the Court recognizes that Ms. Newman also seems to argue that affording both the treating and examining physician's opinions little weight, and formulating an RFC that was not consistent with either opinion, was improper. (Doc. 16, at 12).

unable to walk or stand more than 1 hour, or sit more than 5 hours, over the course of an 8 hour work day, and experienced several postural and environmental limitations. (Doc. 12-8, at 41-42). In support of his decision to discount this opinion, however, the ALJ explained:

> "…[Ms. Newman's] limited treatment history does not support the extreme limitations noted [by Dr. Cline]. More specifically, [Ms. Newman's] physical examination findings, findings that are largely normal throughout her period of care, are not corroborative of this finding of disability. Finally, all opinions rendered as to a claimant's status as 'disabled,' are clearly reserved to the Commissioner. (SSR 96-5p).[12]"

(Doc. 12-2, at 26).

Ms. Newman asserts that the treatment of Dr. Cline's opinion is erroneous, as it fails to properly consider the limitations that stem from her anemia, vertigo, and asthma. (Doc. 16, at 9). Specifically, Ms. Newman contends that these impairments are triggered by exertion and thus not generally observable during routine examinations. (Doc. 16, at 9). For instance, Ms. Newman notes that she experiences difficulty with dizziness and fatigue, in addition to shortness of breath, upon walking and standing for extended periods of time. (Doc. 16, at 9). Upon review of the record, Ms. Newman also testified that her shortness of breath and vertigo primarily occurred when she exerted herself. (Doc. 12-2, at 78). This resulted in dizziness and fatigue, which purportedly caused her to often feel like she might lose consciousness. (Doc. 12-2, at 69, 78-79). Ms. Newman further argues that Dr. Cline's treatment notes consistently documented her anemia, vertigo, asthma and hypertension. (Doc. 21, at 2-3). Indeed, Dr.

_____

[12] "Under 20 CFR 404.1527(e)…some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." SSR 96-5p, 1996 WL 374183 at *2.

Cline's progress notes frequently assessed Ms. Newman with asthma (Doc. 12-7, at 5, 6-7, 9, 20), hypertension (Doc. 12-7, at 6-7, 9, 12, 18), and indicated that she had a history of shortness of breath and bronchitis. (Doc. 12-7, at 4, 6, 8, 11, 15, 17). Dr. Cline also assessed Ms. Newman with anemia (Doc. 12-7, at 16, 19) and vertigo (Doc. 12-7, at 5), and, in her most recent treatment notes, found that Ms. Newman's asthma was poorly controlled and characterized as moderate persistent asthma without complication. (Doc. 12-7, at 19-20). Thus, Ms. Newman contends that the ALJ's reasons for discounting Dr. Cline's medical opinions are vague, do not consider the well documented nature of her impairments, and are not supported by any reference to the evidence. (Doc. 16, at 10; Doc. 21, at 2).

It is well established in the Third Circuit that the ALJ must "set forth the reasons for his decision" to allow for meaningful judicial review. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704–05). Most significantly, the ALJ's decision must be paired with "a clear and satisfactory explication of the basis on which it rests." *Cotter*, 642 F.2d at 704. Such discussion helps to facilitate the Court's review of an ALJ's conclusions under the substantial evidence standard. *See Pope ex re. T.L.D. v. Astrue*, No. 1:11-CV-1820, 2013 WL 4804725, at *3 (M.D. Pa. Sept. 6, 2013) (citing *Cotter*, 642 F.2d at 704). However, the Court also recognizes that an ALJ is not required "to use particular language or adhere to a particular format in conducting his [or her] analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Rather, there must be "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see e.g. Rivera v. Comm'r of Soc. Sec.*, 164 F.App'x 260, 262 (3d Cir. 2006) ("The only requirement is that, reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings."). Nonetheless, the doctrine in *Cotter* is not implicated when the reviewing Court can determine that substantial evidence

supports the Commissioner's decision. *Hernandez v. Comm'r of Soc. Sec.*, 89 F.App'x 771, 774 (3d Cir. 2004).

Here, the Commissioner alleges that the ALJ's rationale for discounting Dr. Cline's opinion was supported by substantial evidence. (Doc. 20, at 19). Specifically, the Commissioner contends that Dr. Cline failed to provide any supporting evidence for the limitations found in her opinion, thereby rendering it "weak evidence at best." (Doc. 20, at 20). Additionally, the Commissioner posits that an ALJ's reliance on a medical opinion is not required in light of the regulations and Third Circuit case law. *See Cummings v. Colvin*, 129 F.Supp.3d 209, 214-15 (W.D. Pa. 2015) (Noting that a claimant's "reliance on *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986) and the other cases cited in his brief for the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."); 20 C.F.R. §404.1527(d)(2); SSR 96-5p, 1996 WL 374183, at *2. The Commissioner further provides examples of alleged inconsistencies which appeared in Dr. Cline's own findings, and argues that Ms. Newman's anemia was reasonably controlled with medication. (Doc. 20, at 19-20). However, the evidence cited to by the Commissioner in support of the ALJ's assessment of Dr. Cline's opinion cannot be considered upon substantial evidence review—indeed, the Court may only review the decision based upon the ALJ's own rationale and findings. *See SEC v. Chenery*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."); *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7; *Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000). Further, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." SSR 96–2p, 1996 WL 374188 at *5. "[W]hen an ALJ fails to adequately explain why a treating physician's medical assessment has been discounted, a remand for further development of the factual record is proper. *Reader v. Colvin*, No. 1:12-CV-1623, 2014 WL 1653090, at *8 (M.D. Pa. Apr. 24, 2014). In this case, the ALJ provided a general explanation that Ms. Newman's limited treatment history did not corroborate Dr. Cline's extreme findings, but did not cite to any specific part of the record in support of this contention. (Doc. 12-2, at 26). Further, the ALJ did not describe which findings were purportedly normal, reference any particular evidence in support of his conclusion, or consider the fact that exertion generally triggered Ms. Newman's impairments. Moreover, upon determining that Dr. Cline's treating physician opinion was not entitled to controlling weight, it is unclear whether the ALJ subsequently weighed the opinion "using all of the factors provided in 20 CFR 404.1527." SSR 96-2p, 1996 WL 374188 at *4. Thus, the vague basis for the ALJ's finding does not constitute a "clear and satisfactory explication of the basis on which it rests." *Cotter,* 642 F.2d at 704-05.

Moreover, although cited to by the ALJ in support of his decision to discount Dr. Cline's medical source statement, the Court notes that SSR 96-5p does not apply to the ALJ's assessment of Dr. Cline's opinion. 20 C.F.R. §404.1527(d) addresses the assessment of medical source opinions on issues reserved to the Commissioner. Examples of such issues, which are not considered medical opinions entitled to any special deference, include: whether an individual's impairments meet the required severity of an impairment in the listings; opinions regarding what an individual's RFC is; whether an individual's RFC prevents the performance of past work; how an individual's vocational factors apply; and determinations of whether an individual is "disabled" under the Act. SSR 96-5p, 1996 WL 374183 at *2. Dr. Cline, however, completed a medical source statement about Ms. Newman's ability to perform work-related

physical activities on a day-to-day basis, and is not an opinion on an issue reserved to the Commissioner. *See* 20 C.F.R. §404.1527(d); SSR 96-5p, 1996 WL 374183. Thus, the Court is not persuaded that this was a proper reason to discount Dr. Cline's opinion. *See Plummer*, 186 F.3d at 429 (An ALJ "cannot reject evidence for no reason or the wrong reason.").[13]

Because the ALJ failed to properly consider Dr. Cline's opinion, and adequately explain why he discounted her report, the Court is hampered in its ability to conduct a meaningful review of the ALJ's decision. *See, e.g.*, *Ray v. Colvin*, Civ. No. 13-CV-0073, 2014 WL 1371585, at *21 (M.D. Pa. Apr. 8, 2014) ("The cursory manner in which the ALJ rejected Dr. Jacob's opinions runs afoul of the regulation's requirement to 'give good reasons' for not crediting the opinion of a treating source upon consideration of the factors listed above. While there may be sufficient evidence in the record to support the ALJ's ultimate decision that Plaintiff was not under a disability, and, thus, the same outcome may result from remand, the court cannot

---

[13] However, even if Dr. Cline's opinion did contain a statement on an issue reserved to the commissioner, the ALJ was not necessarily entitled to discount the opinion on this ground. SSR 96-5p discusses medical opinions on issues reserved to the Commissioner, and "emphasizes to the adjudicator the importance of making 'every reasonable effort to re-contact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.'" *Ferari v. Astrue*, No. CIV.A. 1:07-CV-01287, 2008 WL 2682507, at *6 (M.D. Pa. July 1, 2008). Here, the Commissioner argues that Dr. Cline's opinion was not entitled to greater weight as it was not supported by her medical findings in the record. (Doc. 20, at 20-21). However, there is no indication that the ALJ made any effort to re-contact Dr. Cline for clarification, much less "every reasonable effort." Thus, even if Dr. Cline's opinion's was based on an issue reserved to the commissioner, and had no apparent supporting basis in the medical evidence, the Commissioner's decision to discount the source statement was still not in accordance with the regulations. *Miller v. Colvin*, No. 3:13-CV-02594-GBC, 2015 WL 1609671, at *8–9 (M.D. Pa. Apr. 10, 2015) ("Rejecting the opinion of a treating opinion because it is on an issue reserved to the Commissioner without attempting to re-contact the treating physician for clarification generally constitutes rejecting evidence for the "wrong reason.").

excuse the denial of a mandatory procedural protection on that basis."); *Foley v. Barnhart*, 432 F. Supp. 2d 465, 479 (M.D. Pa. 2005) ("…[T]he ALJ did not properly consider the treating physician's opinion so we cannot say that her decision is supported by substantial evidence."). This failure undermines the accuracy of the ALJ's subsequent RFC assessment, and ultimately his conclusion that Ms. Newman was not disabled at step five. Therefore, based on a review of the ALJ's decision and supporting medical evidence, substantial evidence does not support the weight afforded to Dr. Cline's medical opinion.

### B. REMEDY

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). However, the Third Circuit has advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### V. CONCLUSION

Because the Court concludes that the ALJ erred in his rationale for discounting the medical opinion evidence of record, further development of the record is necessary, and the decision of the Commissioner is **VACATED** and the case **REMANDED**. On remand, the ALJ

shall evaluate the medical opinion evidence of record, explain his evaluation of the medical opinion evidence of record, and cite to specific evidence that supports his conclusion.

An appropriate Order shall follow.


Dated: March 21, 2018                                   s/ Karoline Mehalchick
                                                        **KAROLINE MEHALCHICK**
                                                        **United States Magistrate Judge**